# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| MARY E ROTH, *Individually and as Co-Executor of the Estate of Cletus Roth*; MICHAEL A ROTH, *Individually and as Co-Executor of the Estate of Cletus Roth*; ANNA M ROTH; BRADLEY E ROTH, | No. 15-CV-4074-CJW-MAR |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| vs. | |
| THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, *d/b/a* GOOD SAMARITAN SOCIETY—GEORGE, | |
| Defendants. | |

_____

## TABLE OF CONTENTS

I.   FACTUAL AND PROCEDURAL HISTORY ......................................... 3

     A.   Proceedings in this Court and Arbitration ...................................... 3

     B.   Certified Questions ................................................................. 4

     C.   Second Arbitration Agreement...................................................... 6

II.  FEDERAL ARBITRATION ACT ...................................................... 7

     A.   Applicable Law........................................................................ 7

     B.   Discussion ............................................................................ 8

III.   ISSUE PRECLUSION.................................................................11

IV.   PROCEDURAL POSTURE.........................................................21

V.   CONCLUSION........................................................................23

This matter is before the Court on the parties' Stipulation for Order Confirming Arbitration Decision and Directing Entry of Judgment Thereon (Doc. 46), and on defendant's Motion Requesting Court to Execute Proposed Order Confirming Arbitration Decision and Directing Entry of Judgment Thereon, in Accordance with the Parties' Stipulation (Doc. 49). As explained more fully *infra*, the parties jointly submitted a proposed order confirming an arbitration decision, and the parties request that the Court enter that proposed order. (*See* Docs. 46, 46-3). Although the parties interpret the proposed order differently, both parties now request that the Court enter the proposed order. The Court declines to do so because the proposed order is not clear as to which parties would be subject to final judgment under the order.

The parties have also requested that the Court determine whether the individual plaintiffs' loss of parental consortium claims survive the arbitrator's decision, or whether the arbitrator's decision has a fatally preclusive effect on the individual plaintiffs' claims. The Court finds it appropriate to resolve this issue. The parties submitted briefs on the issue (Docs. 52-54), the Court held a hearing on the issue, and defendant submitted a supplemental brief on the issue, with leave of Court (Doc. 58). Although permitted to do so, plaintiff declined to submit a supplemental brief on the issue. (*See* Doc. 59).

For the following reasons, the parties' Stipulation for Order Confirming Arbitration Decision and Directing Entry of Judgment Thereon (Doc. 46) is **granted** to the extent the pleading seeks entry of judgment on Counts I, II, III, and V, **denied** to the extent the pleading seeks entry of judgment as to Count IV, and **denied** to the extent the

pleading seeks entry of the parties' proposed order (Doc. 46-3). Defendant's individually filed Motion Requesting Court to Execute Proposed Order Confirming Arbitration Decision and Directing Entry of Judgment Thereon, in Accordance with the Parties' Stipulation (Doc. 49) is **denied as moot** to the extent the pleading seeks entry of judgment on Counts I, II, III, and V, and **denied** to the remaining extent the pleading constitutes a motion. Summary judgment is rendered in favor of defendant as to Count IV. The Clerk of Court is directed to enter judgment in defendant's favor as to all counts.

## I.     FACTUAL AND PROCEDURAL HISTORY

### A.     Proceedings in this Court and Arbitration

Defendant is a long-term care facility that "provided nursing home care and memory care services for Cletus Roth from November 27, 2013[,] through February 27, 2014." (Doc. 30, at 2). Around the time Cletus Roth ("Cletus") was admitted to defendant's facility, Cletus' son, Michael Roth, signed an "Admission Agreement" on Cletus' behalf.[1] (*See* Doc. 46-2, at 1-16). The Admission Agreement contained an arbitration provision providing as follows: "Any legal controversy, dispute, disagreement or claim of any kind arising out of or related to this Admission Agreement, or the breach thereof, or, related to the care of [sic] stay at the Facility, shall be settled exclusively by binding arbitration . . .." (*Id.*, at 14). The arbitration provision also specified that the Federal Arbitration Act, Title 9, United States Code, Section 1, *et. seq.*, was to govern the arbitration provision and "all proceedings relating to the arbitration of any claim." (*Id.*, at 15).

Cletus ultimately died, and Cletus' children commenced this action, contending that defendant was responsible for Cletus' death. Mary E. Roth and Michael A. Roth,

---

[1] Michael Roth appears to have signed the Admission Agreement as attorney-in-fact for Cletus. Defendant does not contend that Michael Roth signed the Admission Agreement in his individual capacity.

in their capacities as co-executors of Cletus' Estate brought claims for wrongful death, breach of contract, dependent adult abuse, and punitive damages. (Doc. 3). Mary and Michael Roth, along with their siblings Anna M. Roth and Bradley E. Roth, each brought a claim for loss of parental consortium. (*Id.*).

Defendant filed a motion to compel arbitration (Doc. 6), and this Court granted that motion "as to the plaintiff [E]state's claims." *Roth v. Evangelical Lutheran Good Samaritan Soc'y*, 147 F. Supp. 3d 806, 814 (N.D. Iowa 2015) (emphasis omitted). The Court did not compel arbitration as to the individual plaintiffs' loss of consortium claims and, instead, certified two questions to the Iowa Supreme Court regarding the arbitrability of the individual plaintiffs' loss of consortium claims. *Id.* at 814-15. This Court permitted the parties to "decide for themselves whether to proceed immediately to arbitration of [the Estate's claims] or to await answers to the questions certified . . . before doing so." *Id.* at 814. The parties chose to await the Iowa Supreme Court's opinion before proceeding to arbitration. Ultimately, the arbitrator found that defendant did not act negligently and that judgment should enter in favor of defendant as to those claims that were submitted to the arbitrator. (*See* Doc. 46-1).

### B. Certified Questions

The Iowa Supreme Court answered only one of the certified questions: Does Iowa Code Section 613.15 require that adult children's loss-of-parental-consortium claims be arbitrated when the deceased parent's estate's claims are otherwise subject to arbitration? *Roth v. Evangelical Lutheran Good Samaritan Soc'y*, 886 N.W.2d 601, 603 (Iowa 2016). In answering the question, the Iowa Supreme Court turned to the facts of this case directly and held that the individual plaintiffs' loss of consortium claims were not subject to arbitration. *Id.* at 613. Moreover, the Iowa Supreme Court held that although "loss-of-consortium claims . . . *could* be subject to arbitration, a decedent's arbitration agreement alone is an insufficient basis for this outcome." *Id.* (emphasis in original).

In reaching this holding, the Iowa Supreme Court explained that under Iowa law, a loss of parental consortium claim belongs to the child of the decedent but should be brought by the personal representative of the decedent's estate. *Id.* at 606-07 ("In the case of a parent's death, the child's claim for loss of parental consortium should be brought by the decedent's administrator under [Iowa Code S]ection 613.15." (citation and quotation marks omitted)); *id.* ("The cause of action for parental consortium is to be commenced by . . . the parent's estate although the ownership of the proceeds [is] in the child." (alterations in original) (citation and internal quotation marks omitted)).

The Iowa Supreme Court went on to recognize multiple exceptions to the rule that the personal representative of a decedent's estate is the statutory plaintiff empowered to bring loss of consortium claims. *Id.* at 607-08. One exception is when the child of a decedent establishes "that it is impossible, impracticable or not in the child's best interest for the [statutory plaintiff] to maintain the action." *Id.* at 607 (citation and internal quotation marks omitted). The court also noted "that the rights of adult children to manage and control their own affairs requires that where disagreement arises over who shall control the course of the litigation, this circumstance alone should permit an adult child to maintain a claim under [S]ection 613.15 in the child's own name." *Id.* (citation and internal quotation marks omitted). In short, the Iowa Supreme Court concluded that under Iowa law, 1) the personal representative of a decedent estate will often be the proper plaintiff by whom a loss of parental consortium claim should be brought; 2) a loss of parental consortium claim is not subject to arbitration simply because the decedent estate's claims would be subject to arbitration; and 3) the individual plaintiffs' loss of consortium claims in this case were not subject to arbitration under the Admission Agreement.

## C. Second Arbitration Agreement

After the Iowa Supreme Court issued its decision, counsel for the parties entered into a separate "Agreement for Binding Arbitration." (Doc. 46-2, at 17-21). Plaintiffs are all represented by the same attorneys. One of those attorneys signed the "Agreement for Binding Arbitration" on behalf of "Claimant." (*See id.*, at 21). The agreement states that "Claimant" refers to "Estate of Roth." (*Id.*, at 19). Defendant has abandoned its argument that the individual plaintiffs' loss of consortium claims were subject to arbitration based on the Admission Agreement. Defendant now argues that the second agreement, the "Agreement for Binding Arbitration," encompassed all claims that the Estate had standing to pursue, including the loss of consortium claims. (*See* Doc. 53, at 8 ("The Estate had a full and fair opportunity to present all claims that it had standing to pursue, *including the adult children's loss of consortium claims*, had it chosen to." (emphasis in original)). Defendant thus reasons that counsel's signature on behalf of "Estate of Roth" was made on behalf of the Estate, in its own capacity, and on behalf of the individual plaintiffs.

Based on defendant's argument that the loss of consortium claims were included in the "Agreement for Binding Arbitration," defendant asserts that the Federal Arbitration Act entitles defendant to judgment in its favor on all claims, including the loss of consortium claims. (*Id.*, at 9). Alternatively, defendant argues that the arbitrator's finding that defendant "properly cared for [Cletus]" (Doc. 46-1, at 5-6), should be given preclusive effect as to the individual plaintiffs' loss of consortium claims. (Doc. 53, at 10-12).

Plaintiffs do not contest that this Court should enter judgment in favor of defendant on the claims that have been brought on behalf of the Estate. Plaintiffs' only challenge is with respect to the loss of consortium claims. Plaintiffs assert that the arbitrator had jurisdiction over only the Estate's claims—not the individual plaintiffs' claims—and that

the arbitrator's decision should have no effect on the individual plaintiffs' claims. (Doc. 54, at 1-2). Additionally, plaintiffs assert that under Iowa law, the arbitrator's decision should not be given preclusive effect as to the individual plaintiffs' claims. (Docs. 52, at 5-9; 54, at 3-4).

## II.    FEDERAL ARBITRATION ACT

As noted, defendant asserts two different theories in support of its argument that the arbitral decision resolves all issues remaining in this case. The Court will address both of those theories, turning first to defendant's argument under the Federal Arbitration Act, then to defendant's argument that the doctrine of issue preclusion bars plaintiff from relitigating the issue of whether defendant acted negligently in caring for Cletus.

### A.    Applicable Law

The Federal Arbitration Act provides as follows:

> [Section 2] A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . ..
>
> [Section 9] If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, . . . any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . ..

9 U.S.C. §§ 2, 9.

The United States Supreme Court has held that Section Two of the Federal Arbitration Act addresses "written arbitration agreements." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009). Although Section Two "creates substantive federal law regarding the enforceability of arbitration agreements," it does not "purport[ ] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Id.* at 630. The Supreme Court went

on to hold that state law "is applicable to determine which contracts are binding under [Section Two] . . . *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Id.* at 630-31 (emphasis in original) (citations and internal quotation marks omitted).

### B.    *Discussion*

Defendant now argues that the "Agreement for Binding Arbitration," which is a written contract contemplating arbitration, is applicable to both the Estate and to the individual plaintiffs.  To determine whether the individual plaintiffs in this case agreed to arbitrate their loss of consortium claims under the "Agreement for Binding Arbitration," the Court must turn to Iowa law to determine whether plaintiffs' counsel signed the Agreement on behalf of just the Estate, in its own capacity, or whether counsel also signed the Agreement on behalf of the Estate, in its capacity as representative of the individual plaintiffs' claims.  In answering this Court's certified question, the Iowa Supreme Court held "it seems quite wrong that an adult child could be bound to [the Federal Arbitration Act] absent his or her agreement, simply because the adult child's claim is routed procedurally through a different party." *Roth*, 886 N.W.2d at 613-14. Thus, the question in this case becomes whether the individual plaintiffs, who are Cletus' adult children,[2] agreed to submit their claims to arbitration under the "Agreement for Binding Arbitration."

Here, there is no indication that the individual plaintiffs agreed to arbitrate their claims.  Indeed, the individual plaintiffs, through the same attorney who signed the "Agreement for Binding Arbitration" successfully argued against defendant's motion to

---

[2] In their complaint, plaintiffs plead that the individual plaintiffs "are the adult children of Cletus Roth." (Doc. 3, at 7).  Although defendant denied the allegation "for lack of information," (Doc. 30, at 5), there appears to be no real dispute whether the individual plaintiffs have reached the age of majority.

compel arbitration. The Iowa Supreme Court unequivocally stated, "we do not find the [individual plaintiffs'] consortium claims subject to arbitration under the facts certified to us." *Roth*, 886 N.W.2d at 613. Defendant has not come forward with an explanation as to why the individual plaintiffs would change their stance as to arbitrability in the days immediately before the Estate's claims were to proceed to arbitration, nor has defendant come forward with any evidence indicating that the individual plaintiffs actually *did* change their stance and agree to arbitration.

"In order to be bound, the contracting parties . . . must manifest their mutual assent to the terms sought to be enforced. Mutual assent is present when it is clear from the objective evidence that there has been a meeting of the minds." *Estate of Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 302-03 (Iowa 2017) (citations and internal quotation marks omitted). Considering the backdrop of this case as submitting *only* the Estate's claims—not the individual plaintiff's claims—to arbitration, there is nothing to indicate that the parties[3] would have understood the "Agreement for Binding Arbitration" as binding the individual plaintiffs, as well as the Estate. Further, the Court finds that the objective evidence before the Court certainly does not make it "clear" that the individual plaintiffs agreed to arbitrate their claims, either on their own or through the Estate. If the objective evidence shows anything, it is that the individual plaintiffs *did not* agree to arbitrate their claims, either by acting on their own behalves or through the Estate.

The Court offered the parties the opportunity to address whether the Court should consider parol evidence in interpreting the meaning of "the Estate," as used in the "Agreement for Binding Arbitration." Neither party addressed the issue, however, and the Court will not consider whether "the Estate" is ambiguous such that parol evidence

---

[3] As used here, "parties" means the Estate, as a signatory to the "Agreement for Binding Arbitration," and defendant.

could be considered, nor will the Court consider any parol evidence. *See Montgomery Props. Corp. v. Econ. Forms Corp.*, 305 N.W.2d 470, 475-76 (Iowa 1981) ("Although extrinsic evidence may be admissible to explain the real meaning of the parties by the language used in a contract, the parol evidence rule forbids the use of extrinsic evidence to vary, add to, or subtract from a written agreement." (citations omitted)). The Court will note, however, that if the Court were to consider parol evidence, the only parol evidence the Court has would reinforce the Court's finding that the individual plaintiffs did not agree to arbitrate their claims. (*See* Doc. 54-2, at 1 (email from plaintiffs' counsel stating "We have always proceeded as though we are arbitrating the claims of the [E]state . . .. I want to be explicit that we are arbitrating the Estate's claims . . . and that the consortium claims of the children remain with the district court to be tried . . ..")).

On this record, there is simply no indication, much less an evidentiary showing, that the individual plaintiffs agreed to arbitrate their claims or that the Estate bound them to arbitrate their claims. As the individual plaintiffs did not agree to arbitrate their claims, the arbitrator's decision should be given no direct effect as to the individual plaintiffs.[4]

---

[4] Defendant included the following caveat in its supplemental brief:

> Arbitration is a matter of contract. The Estate of Cletus Roth . . . by its counsel, signed a contract on December 6, 2018, agreeing to resolve *all* disputes it had against [defendant]. Plaintiff's counsel had the authority to select the arbitrator and to bind the Estate, in contract, to arbitrate any issue.
> [Defendant] has made this argument for judgment on the loss of consortium claim separate and apart from its primary argument for issue preclusion and *in the alternative*. If this Court has not been persuaded that a contract, signed by [p]laintiff's counsel on December 6, 2018, submitted the loss of consortium claim to arbitration, then [defendant] withdraws this argument and asks this Court to return to its former understanding of [which] claims actually were submitted and were decided by the arbitrator.

(Doc. 58, at 3 (emphasis in original)).

The Court does find, however, and the parties agree, that the arbitration decision is valid as to the Estate's claims. Pursuant to Section Nine of the Federal Arbitration Act, the parties' Stipulation for Order Confirming Arbitration Decision and Directing Entry of Judgment Thereon is **granted** as to all pending claims that the Estate of Cletus Roth owns, and **denied** as the individual plaintiffs' loss of consortium claims. Judgment is to be entered in favor of defendant on Counts I, II, III, and V. Defendant's Motion Requesting Court to Execute Proposed Order Confirming Arbitration Decision and Directing Entry of Judgment Thereon, in Accordance with the Parties' Stipulation (Doc. 49), which is not a joint motion, is **denied as moot**.

### III.    ISSUE PRECLUSION

Defendant next argues that even if the individual plaintiffs' claims were not subject to arbitration and were, thus, not resolved by the arbitral decision, the individual plaintiffs would be unable to prove their claims at trial. Specifically, defendant argues that the arbitrator's finding that defendant "properly cared for [Cletus]," (Doc. 46-1, at 5-6), was a finding that defendant did not act negligently with respect to Cletus' care, and that this finding should be given preclusive effect as to the individual plaintiffs' claims. (Doc. 53, at 12). Based on the assertion that the arbitrator's finding should be given preclusive effect, defendant argues that the individual plaintiffs will be unable to prove an essential

---

As explained in the body of this Order, the Court is not persuaded that the December 6, 2018 contract binds the individual plaintiffs. The Court is unclear, however, as to the "former understanding" defendant references. In light of the uncertainty, the Court finds it more proper to consider defendant's argument under the Federal Arbitration Act as not having been withdrawn. Should the issue arise in the future, defendant may more fully explain which argument defendant wishes to withdraw, and the Court will consider the issue at that time. Further, although the Court addresses the Federal Arbitration Act first in considering the parties' arguments, the Court's conclusions would be the same if the Court were to address issue preclusion first.

element of their consortium claims—the element of negligence—and that judgment should thus be entered in favor of defendant on the consortium claims. (*Id.*, at 18-19).

Federal courts "look to state law in determining whether to apply issue preclusion." *Manion v. Nagin*, 394 F.3d 1062, 1066 (8th Cir. 2005) (citation and internal quotation marks omitted). The Court will, thus, consult Iowa law in addressing the parties' arguments regarding issue preclusion.

> The doctrine of issue preclusion prevents a party to a prior action in which a judgment has been rendered from relitigating in a subsequent action issues raised and resolved in the previous action. We have said that issue preclusion applies if the following four requirements are met: 1) the issue determined in the prior action is identical to the present issue; 2) the issue was raised and litigated in the prior action; 3) the issue was material and relevant to the disposition in the prior action; and 4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.
> In addition to these four requirements, either 1) the parties in both actions must be the same (mutuality of parties), or 2) there must be privity between the party against whom issue preclusion is invoked and the party against whom the issue was decided in the first litigation. A "privy" means one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.

*Dettman v. Kruckenberg*, 613 N.W.2d 238, 244 (Iowa 2000) (internal citations and quotation marks omitted).

The Iowa Supreme Court has not directly addressed the issue of whether a binding arbitral decision can have a preclusive effect in a subsequent court proceeding. An Iowa District Court, on the other hand, has found an arbitral decision to have a preclusive effect in a subsequent court case. *Horsfield Constr., Inc. v. City of Dyersville*, Nos. LACV054287, LACV055840, 2011 WL 4873434 (Iowa Dist. Ct. Aug. 8, 2011). Further, the Iowa Supreme Court has entertained cases asserting that an arbitral decision can have a preclusive effect. *See, e.g.*, *Westegard v. Davis Cty. Cmty. Sch. Dist.*, 580

N.W.2d 726, 728-29 (Iowa 1998).[5] *See also Woodruff v. Assoc. Grocers of Iowa, Inc.*, 364 N.W.2d 215, 217 (Iowa 1985) (the court held that it is possible for an arbitral decision to have a preclusive effect on a claim that could have been properly brought before an arbitrator, but the court did not squarely address whether the same preclusive effect could be had on a claim over which the arbitrator had no authority).

The caselaw, thus, indicates that under Iowa law, an arbitration decision can have a preclusive effect in subsequent court cases. Regardless, the parties' briefs and arguments are made as though the parties agree that an arbitral decision can have a preclusive effect in a subsequent court proceeding. (*See* Doc. 52, at 6-7 (acknowledging that in certain circumstances, arbitrations can have a preclusive effect in subsequent legal proceedings; proceeding to argue the merits of issue preclusion, but declining to argue that preclusive application of an arbitral decision in subsequent court proceedings would be improper)). The Court therefore finds it unnecessary to address the issue further.

The Court finds that the first four elements enumerated in *Dettman* are satisfied, and the parties do not argue otherwise. The issue of defendant's negligence was an element of the Estate's wrongful death claim. *See Wolbers v. Finley Hosp.*, 673 N.W.2d 728, 735 (Iowa 2003) (in a wrongful death action, addressing whether the defendant was negligent in breaching the applicable standard of care). The wrongful death claim was properly before the arbitrator, and the arbitrator found that defendant properly cared for

---

[5] The Iowa Supreme Court has interpreted *Westegard* as holding that "arbitration awards may have preclusive effect in later litigation if the issues are identical." *Deerfield Constr. Co. v. Crisman Corp.*, 616 N.W.2d 630, 632 (Iowa 2000). *Deerfield*, however, presented the issue of whether an arbitral decision could have a preclusive effect in a subsequent *arbitration*, not in a subsequent court case. *Id. See also AFSCME Iowa Council 61 v. Iowa, Dep't. of Pers.*, No. 05-1891, 2007 WL 750602, at *4 (Iowa Ct. App. Mar. 14, 2007) (citing *Deerfield* for the proposition that "[t]he concept of issue preclusion is applicable in successive *arbitrations* if the issues are identical" (emphasis added)). Thus, although *Deerfield* is informative, it leaves unanswered the question of whether an arbitral decision can have a preclusive effect in a subsequent court case.

the decedent. The issue of whether defendant rendered proper care is, thus, identical as between the loss of consortium claims and the wrongful death claim. Moreover, to succeed on their loss of consortium claims, the individual plaintiffs must show that defendant acted negligently. *Audubon-Exira Ready Mix, Inc. v. Ill. Cent. Gulf R.R. Co.*, 335 N.W.2d 148, 149 (Iowa 1983) (recognizing that recovery can be had on a loss of consortium claim upon a finding of negligence). The issue of negligence is, thus, material to the loss of consortium claims, just as it was to the wrongful death claim.

The parties presented evidence and testimony to the arbitrator, which establishes that the parties actively litigated the arbitration, as is discussed *infra*. Finally, the arbitrator reached his decision based on his finding that defendant properly cared for the decedent. (Doc. 46-1, at 5-6). Because this was the sole basis for the arbitrator's decision, the issue of negligence was necessary and essential to the arbitrator's decision in favor of defendant. Likewise, had the arbitrator found in favor of plaintiff, the arbitrator would have had to make an affirmative finding of negligence. This, again, would render the issue of negligence a necessary and essential component of the arbitral decision.

The Court finds, however, that the parties to the arbitral proceedings were not the same as the parties to this action. Although defendant was named in both actions, the plaintiffs were not identical in the two actions. In the arbitral forum, the only claimants were Mary E. Roth and Michael A. Roth, as co-executors of the Estate. (Doc. 46-1, at 1). Mary E. Roth and Michael A. Roth were not parties in their individual capacity. Further, Anna M. Roth and Bradley E. Roth are named plaintiffs in this action, are not co-executors of the Estate, and were not parties, in *any* capacity, to the arbitration proceedings. The Court, thus, finds that the parties were not the same in both actions. Specifically, the Court finds that the only overlap between the parties in this case and the parties to the arbitration proceedings are defendant, and Mary E. Roth and Michael A.

Roth, to the extent Mary E. Roth and Michael A. Roth are privileged to act in their capacities as co-executors of the Estate. None of Cletus' adult children, in their individual capacities, were named in the arbitration proceedings and, thus, were not parties to that action. The turning point for the applicability of issue preclusion, then, rests on whether the parties to the arbitration proceedings are in privity with the four adult children who are named as plaintiffs in this action.

The Iowa Supreme Court has long emphasized that for a prior determination to have a preclusive effect on a privy, the privy's property interest in the subject matter affected by the judgment cannot have attached *before* the judgment was rendered:

> "Privity" is said to be a mutual or successive relationship to the same rights of property, and if it is sought to bind one as privy by an adjudication against another with whom he is in privity, it must appear that at the time he acquired the right . . . it was then affected by the adjudication, for, *if the right was acquired by him before the adjudication, then the doctrine cannot apply*.

*White v. Peterson*, 269 N.W. 878, 880-81 (Iowa 1936) (emphasis in original) (citation and internal quotation marks omitted). *See also Brown v. Kassouf*, 558 N.W.2d 161, 163 (Iowa 1997) ("A 'privy' for issue preclusion purposes means one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." (citation and internal quotation marks omitted)).

In this case, the Court finds that there can be no real question as to whether the individual plaintiffs' interests in their loss of consortium claims accrued long before the arbitral decision was rendered. In arguing this case in the arbitral forum, the parties stipulated that Cletus passed away on March 17, 2014. (Doc. 54-1, at 1). The individual plaintiffs' loss of consortium claims accrued at the time they became aware of their father's death. *See Christy v. Miulli*, 692 N.W.2d 694, 706 (Iowa 2005) (holding that

the statute of limitations for loss of spousal consortium claims begins to run on the date the surviving spouse learns of the decedent spouse's death).

The parties have not informed the Court as to the date each individual plaintiff became aware of Cletus' death, but the Court finds that they must have become aware of Cletus' death before filing their complaint on August 14, 2015. (Doc. 3). At the very latest, then, the individual plaintiffs' loss of consortium claims accrued on August 14, 2015. This was more than three years before the arbitral proceedings occurred and nearly three and one-half years before the arbitral decision was rendered. (Doc. 53, at 5 (stating that arbitration occurred on December 17 and 18, 2018, and that the arbitrator issued his decision on January 21, 2019)). Because the arbitral decision was rendered *after* the individual plaintiffs' interests attached in their loss of consortium claims, the individual plaintiffs cannot be in privity with the Estate for purposes of issue preclusion. Defendant's argument in favor of issue preclusion therefore must fail, to the extent defendant's argument rests on a privity theory.

Defendant, however, offers an alternative argument. Defendant asserts that it is using the doctrine of issue preclusion "defensively," and that "defensive issue preclusion," as an independently recognized doctrine, does not require mutuality of the parties to the two actions or that the parties be in privity with each other. (Doc. 53, at 15). "Ordinarily, the phrase 'defensive use' of issue preclusion is used to mean the reliance upon a former judgment, by a stranger to that judgment who is a defendant in the second action, as conclusively establishing in his favor an issue which he must prove as an element of his defense." *Opheim v. Am. Interinsurance Exch.*, 430 N.W.2d 118, 120 (Iowa 1988) (citations omitted). The facts of this case do not invoke "defensive issue preclusion," as that phrase is typically used.

Issue preclusion may, however, be "invoked defensively against [a] stranger to the former judgment." *Id.* When issue preclusion is used in this fashion, mutuality of

the parties is not required, nor does the party against whom the doctrine is invoked need to be in privity with a party to the previous judgment. *Id.* (citations omitted). Instead, "the party against whom [the doctrine] is invoked must have been so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution." *Id.* (citations omitted).

The Court must address two separate prongs in determining whether to apply issue preclusion in this manner. *Lyons v. Andersen*, 123 F. Supp. 2d 485, 498 (N.D. Iowa 2000). One, the Court must determine whether the party against whom issue preclusion is to be invoked was sufficiently connected in interest with the party against whom the issue was decided in the prior action. *Id.* (citation omitted). Two, the Court must address whether there was a full and fair opportunity to litigate the issue in the prior action. *Id.* (citation omitted).

As discussed above, the only claims before the arbitrator were those claims that belonged to the Estate. Further, the only parties before the arbitrator were the co-executors of the Estate, acting on behalf of the Estate. Thus, the individual plaintiffs, who are before this Court, were not before the arbitrator. The Court finds, however, that the co-executors of the estate are "so connected in interest" with each of the four individual plaintiffs that issue preclusion should apply to bar the individual plaintiffs from arguing that defendant was negligent.

The two co-executors, Mary and Michael Roth, are also individual plaintiffs to this action. They played an active role in the arbitration proceedings by testifying and appearing personally for the duration of the proceedings. (*See* Doc. 53, at 8-9). Further, the co-executors had full control over how they would litigate the Estate's claims, including the wrongful death claim. *See Berenger v. Frink*, 314 N.W.2d 388, 390 (Iowa 1982) (discussing Iowa's survival statute). Even though Mary and Michael Roth were

acting in their capacities as co-executors, as opposed to in their individual capacities, the Court finds that Mary and Michael Roth had a full and fair opportunity to litigate the issue of negligence before the arbitrator.  This situation is similar to that of a mother bringing suit on her own behalf and on behalf of her minor child.  In such a case, the Iowa Court of Appeals held that issue preclusion applied to the minor child's claims because the mother was the proper party to bring the child's claims and had already litigated her own claims.  *Bryan v. Hall*, 367 N.W.2d 251, 255 (Iowa Ct. App. 1985).

Here, Mary and Michael Roth are parties, in some capacity, to both actions, and they had every motivation to prove negligence in the arbitral forum.  Indeed, given that the arbitrator was considering claims for breach of contract, wrongful death, dependent adult abuse, and punitive damages, Mary and Michael Roth likely had a greater motivation to fully litigate their claims in the arbitral forum than they have here.  The only claims before this Court, in contrast, are the loss of consortium claims.  Thus, a judgment in favor of plaintiffs in this Court would likely be less than any award that the Estate stood to obtain in the arbitral forum.  That Mary and Michael Roth were unable to prove negligence when faced with the possibility of a larger judgment is telling.  The facts of this case leave the Court persuaded that both prongs of the test for defensive issue preclusion have been satisfied as to Mary and Michael Roth and that they should be barred from relitigating the issue of defendant's negligence.

The Court reaches the same conclusion as to Anna and Bradley Roth, who are individual plaintiffs but played no role in the arbitral proceedings.  Although Anna and Bradley Roth were not represented at the arbitral proceedings, the Estate was represented, and it is through the Estate that the individual plaintiffs' claims are being litigated.  The Estate and Mary and Michael Roth all had the same motivation to fully litigate the issue of negligence as Anna and Bradley Roth would have had.  As has already been explained, the Estate had a full and fair opportunity to litigate its claims, which included proving

that defendant was negligent. The Estate failed to establish negligence in the arbitral forum, and the Estate should not be given yet another chance to do so.

Although the individual plaintiffs did not agree to arbitrate their claims, they have not sought to pursue their loss of consortium claims in their own names, as opposed to through the Estate. The Estate, thus, remains the party through which the individual plaintiffs are litigating their loss of consortium claims. In light of this crucial fact, the Court finds that all of the individual plaintiffs were and are "so connected in interest" with the Estate that the first prong of the defensive issue preclusion test is satisfied. Likewise, the Court finds that the issue of negligence was fully and fairly litigated in the arbitral forum, and there is no indication that the individual plaintiffs would argue their case any differently were they to proceed to trial. Thus, issue preclusion is properly applicable to all of the individual plaintiffs. The individual plaintiffs are, therefore, precluded from arguing that defendant was negligent.

Although the individual plaintiffs argue that precluding them from litigating their consortium claims in this Court renders the Iowa Supreme Court's opinion *pro forma*, the individual plaintiffs are mistaken. The Iowa Supreme Court addressed only whether the individual plaintiffs were required to arbitrate their loss of consortium claims, but the court did not address whether preclusive effect could be given to an arbitral decision as to claims that were not compelled to arbitration. The issues the Iowa Supreme Court considered are simply different from the issues now before this Court.

Further, the Court notes that an arbitral decision will not always have a preclusive effect as to loss of consortium claims. Had the Estate not brought its wrongful death claim and had, for instance, only brought its breach of contract claim, the issue of negligence would not have been presented to the arbitrator. In the absence of identical issues before the arbitrator and this Court, the individual plaintiffs' loss of consortium claims may not be defeated by the doctrine of issue preclusion. It is only by reason of

the discrete facts of this case that the arbitral decision has a preclusive effect in this Court.[6]  This Court's holding, then, does not render the Iowa Supreme Court's opinion *pro forma*.

The individual plaintiffs argue that this result violates their rights to a jury, as guaranteed under both the Seventh Amendment to the United States Constitution and Article I, Section 9 of the Iowa Constitution.[7]  (Doc. 52, at 2-3).  Both arguments fail. The United States Supreme Court has held "that the right to a jury trial does not negate the issue-preclusive effect of a judgment, even if that judgment was entered by a juryless tribunal." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1304 (2015) (citation omitted).  Similarly, the Iowa Supreme Court has repeatedly held that the doctrine of issue preclusion can properly be applied under Iowa law.  *Bandstra v.*

---

[6] The Court also notes that the individual plaintiffs cite *Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104, 111 (1991), in support of their argument that giving preclusive effect to the arbitral decision would render the Iowa Supreme Court's opinion *pro forma*.  *Solimino*, however, has no bearing on this case.  *Solimino* addressed a federal statute that required litigants to pursue state law claims in a state forum before filing in federal court. *Id.* at 110-11.  The statute, thus, implicitly recognized the possibility of federal litigation between the same parties following the claimant's unsuccessful pursuit of his claims in the state forum. *Id.*  The United States Supreme Court held that because Congress permitted litigants to argue their claims in both state forums and federal court, the proceedings in the state forum should not be given preclusive effect in federal court.  *Id.* at 111.  Importantly, the statute required litigants to pursue state remedies before federal remedies, meaning that no claim would be argued for the first time in federal court, and the federal claims would always be precluded by the state determinations if the Court were to permit the application of issue preclusion in the federal action.  *Id.* at 110-11.  The facts of this case are markedly different, and the rationale from *Solimino* is inapplicable in this case.

[7] The individual plaintiffs only explicitly argue that applying that the arbitrator's decision to them would violate their constitutional rights to trial by jury.  The individual plaintiffs do not argue that the doctrine of issue preclusion, which would have the same effect as holding the arbitrator's decision binding as to the individual plaintiffs, is unconstitutional.  Nonetheless, the Court will address the constitutionality of issue preclusion under both the federal Constitution and the Iowa Constitution.

*Covenant Reformed Church*, 913 N.W.2d 19, 51 (Iowa 2018) ("Although offensive use of issue preclusion is allowed in Iowa, it is more restrictively and cautiously applied than defensive issue preclusion." (citing *Buckingham v. Fed. Land Bank Ass'n*, 398 N.W.2d 873, 876 (Iowa 1987))).  The individual plaintiffs' arguments as to the constitutionality of barring them from going to trial on the issue of negligence, thus, fail.

## IV.  PROCEDURAL POSTURE

Finally, the Court finds it procedurally proper to grant summary judgment in favor of defendant as to the individual plaintiffs' loss of consortium claims.  The parties requested that the Court address the applicability of issue preclusion, and the parties knew when they made the request that if the Court were to find issue preclusion applicable, the individual plaintiffs would be unable to establish a necessary element of their claims. The Court ordered the parties to brief the issue, and the parties did so.  The Court held a hearing, at the beginning of which the Court informed the parties that it viewed one theory as being that the matter at hand was essentially a summary judgment issue.  (Doc. 56, at 6-7).  The Court then gave the parties an opportunity to argue their positions at the hearing, and the Court permitted the parties to submit supplemental briefing after the hearing.  Toward the conclusion of the hearing, the Court reiterated its position that it viewed the matter as being, essentially, a summary judgment issue.  (*Id.*, at 54).

Federal Rule of Civil Procedure 56(f) requires a court to give "notice and a reasonable time to respond" before granting summary judgment for a non-movant, on grounds not raised by a party, or "on its own after identifying for the parties material facts that may not genuinely be in dispute."  Here, the parties first raised the potentially dispositive nature of issue preclusion, and the Court's ruling fits squarely within the parties' arguments.  The Court thus finds summary judgment proper for two separate reasons.

First, because the parties raised the issue before the Court, and because the parties requested that the Court set a briefing schedule to address the issue, the Court views the parties' request as seeking leave of Court to submit dispositive motions. The deadline to submit dispositive motions was October 1, 2018 (Doc. 29, at 3), which was approximately three and one-half months before the arbitrator issued his decision. In light of the arbitral decision's issuance coming after the dispositive motions deadline, the Court finds that the parties' failure to timely move for an extension of the dispositive motions deadline was due to excusable neglect. *See* FED. R. CIV. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). Further, the parties timely notified the Court that the arbitrator's decision created a potentially dispositive issue. The Court finds that the creation of this dispositive issue warrants good cause to modify the Scheduling Order. *See* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). In permitting the parties to brief the issue, the Court effectively extended the deadline to submit dispositive motions through the dates established in the briefing order. (*See* Doc. 48). The Court is now granting defendant's motion for summary judgment as to the individual plaintiffs' loss of consortium claims.

Further, even if the Court were not of the view that the parties moved for summary judgment, the Court could properly grant summary judgment on its own. The Court's notice to the parties that it was considering the issues before the Court as being summary judgment issues was more than sufficient under Rule 56. The Court held two separate hearings, during which the Court discussed with the parties, at the parties' request, the potentially dispositive nature of the arbitrator's decision (*See* Docs. 47, 55), and the Court repeatedly informed the parties that it considered the issues to be, essentially, "summary judgment" issues. The Eighth Circuit Court of Appeals has held that lesser notice is

sufficient under Rule 56.  *See Macquarie Bank Ltd. v. Knickel*, 793 F.3d 926, 935-36 (8th Cir. 2015) (upholding summary judgment where the court informed the parties as to the dispositive issue during the final pretrial conference, without explicitly referring to the issue as a "summary judgment" issue).

Further, the Eighth Circuit requires only that a party be given an opportunity to respond to the issue that the Court ultimately rules on.  *Id.*  Again, this Court has gone above the requirements of Rule 56.  The Court held two hearings to address the issue, one of which was scheduled for the sole reason of addressing the merits of the potentially dispositive issues, and the Court permitted the parties to submit opening briefs and supplemental briefs on the issue.  The parties had every opportunity to argue the issues at hand, and they did so vigorously.  Thus, the Court finds it procedurally proper to grant summary judgment under Rule 56(f).

## *V.    CONCLUSION*

For the reasons stated above, the parties' Stipulation for Order Confirming Arbitration Decision and Directing Entry of Judgment Thereon (Doc. 46) is **granted** to the extent the pleading seeks entry of judgment on Counts I, II, III, and V, **denied** to the extent the pleading seeks entry of judgment as to Count IV, and **denied** to the extent the pleading seeks entry of the parties' proposed order (Doc. 46-3).  Defendant's individually filed Motion Requesting Court to Execute Proposed Order Confirming Arbitration Decision and Directing Entry of Judgment Thereon, in Accordance with the Parties' Stipulation (Doc. 49) is **denied as moot** to the extent the pleading seeks entry of judgment on Counts I, II, III, and V, and **denied** to the remaining extent the pleading constitutes a motion.

Summary judgment is rendered in favor of defendant as to Count IV. The Clerk of Court is directed to enter judgment in defendant's favor as to all counts.

**IT IS SO ORDERED** this 14th day of May, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa